UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

ROBERT L. BRUBAKER, et al., )
)
        Plaintiffs )
)
      v. )    Civil Action No. 00-2511
)    (EGS)
METROPOLITAN LIFE INSURANCE )
COMPANY, et al., )
)
        Defendants. )

---

**MEMORANDUM OPINION**

This is an action to recover benefits allegedly due under a pension plan, pursuant to the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (ERISA). Pending before the Court is defendant Metropolitan Life Insurance Company and defendant Metropolitan Life Retirement Plan for United States Employees' motion for summary judgment. Upon consideration of defendants' motion, the opposition thereto and the reply in support thereof, the relevant statutory and case law, and for the reasons set forth below, the Court **GRANTS** defendants' Motion for Summary Judgment.

**I.    BACKGROUND**

As early as 1949, Metropolitan Life Insurance Company ("MetLife") provided a pension plan (the "Plan") for its employees. Under the Plan, employees who had reached their

1

thirty-fifth birthday and had worked for MetLife for at least five years were eligible for benefits.  The normal retirement age was sixty-five for men and sixty for women.  However, employees were eligible for early retirement ten years before the normal requirement, with the Company's approval, or five years before the normal retirement date if they had contributed to the Plan for at least fifteen years immediately preceding their departure from MetLife.

If an employee chose to terminate their employment with MetLife before meeting the age and years of service requirements for retirement under the Plan, they could either opt to receive a one-time cash surrender value of their vested annuity or retain a deferred vested annuity that began to mete out monthly payments once the employee turned sixty five.  On a discretionary basis, the company would periodically award *ad hoc* increases to its retirement benefits to account for cost of living adjustments and changed conditions.  MetLife provided one such *ad hoc* benefit increase to its retirees in 1996.  In a letter dated May 1996, MetLife writes to "Retirees in the United States Who Retired Prior to January 1, 1993":

> I am pleased to announce that MetLife will increase pension benefits for all retirees under the Company's retirement plan prior to January 1, 1993 with at least five years of MetLife service.

2

Def. Ex. A23.  In addition, in November 1992, MetLife notified "retired MetLife Associates and Spouses" that the Company would provide a special one-time pension payment to "all employees who retired prior to January 1, 1988."   Def. Ex. A22.

Plaintiff Robert Brubaker, a former employee of MetLife between 1953 and 1961, argues that he is entitled to both the 1996 *ad hoc* increase and the 1992 one-time payment.  Upon terminating his employment with MetLife, Brubaker went to work for a MetLife competitor and indeed retired from that competitor after thirty five years of service to that company.  When Brubaker left MetLife, he opted to retain a vested benefit as a deferred annuity.

In April 2000, Plaintiff Brubaker wrote to MetLife seeking the 1992 one-time pension payment and the 1996 *ad hoc* pension increase.  MetLife denied Brubaker's administrative claim on the grounds that he was not considered a retiree based upon his status as a deferred vested annuitant.

Plaintiff Margaret Hayes was added to this lawsuit in March 2001.  As the widow of a former MetLife employee, she alleges that her then-living husband was also entitled to the 1992 one-time payment, even though he did not fulfill the normal requirements of retirement when he terminated his employment with MetLife after thirty years.  Like Plaintiff Brubaker, Mr. Hayes

3

chose to vest his benefits in a deferred annuity.  Neither Mr. Hayes nor Mrs. Hayes filed an administrative claim.

Plaintiffs claim that MetLife promised the benefits to its retirees and, even though plaintiffs did not retire from MetLife, because plaintiffs are nonetheless retired and because the Plan itself does not define the terms "retiree", "retired employee" or "retired," plaintiffs believe they qualify for the benefit increases.  Plaintiffs also argue that the Plan is an ambiguous contract, which, read in light of extrinsic evidence, would lead to the conclusion that deferred vested annuitants who are retired are entitled to the one-time payment and the *ad hoc* increases just as retirees who have met the formal retirement requirements of the 1949 Plan.

Defendants now move for summary judgment on the grounds that the parties have conducted discovery and plaintiffs cannot establish any genuine issue of material fact in dispute. Defendants argue that Plan documents, including a 1991 Summary Plan Description, are clear that retired employees are only those persons who have retired from MetLife with a currently payable pension benefit under the Plan.  Defendants thus maintain that plaintiffs are not entitled to the benefit increases because, as deferred vested annuitants, they are not considered retirees.

4

**II.   DISCUSSION**

**A.   STANDARD OF REVIEW**

Pending before this Court is a motion for summary judgment. Summary judgment is granted pursuant to Fed. R. Civ. P. 56 only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). When deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, according the benefit of all reasonable inferences to that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505 (1986).  Thus, the Court will grant summary judgment only if the nonmoving party is entitled to judgment as a matter of law based upon material facts that are not in dispute.  *See Rhoads v. McFerran*, 517 F.2d 66, 67 (2d cir. 1975).

**B.   SUMMARY JUDGMENT**

   **1.  The 1949 Plan and 1991 Summary Plan Description**

Plaintiffs argue that because the original MetLife Plan does not define the terms "retire," "retirement," or "retiree," the original plan document is rendered ambiguous as to whether deferred vested annuitants are entitled to the benefit adjustments in controversy.  Defendants counter that when interpreted together with the statutorily mandated production and

dissemination of a Summary Plan Description ("SPD"), both the plain meaning of the documents and the intent of the drafters are clear that only those who had met the formal requirements for MetLife retirement were eligible for the benefit increases.

As a preliminary matter, when interpreting an employee benefit plan, the SPD should be considered part of the Plan documents. *See Guyther v. DOL Fed. Credit Union,* 193 F. Supp. 2d 127, 130 (D.D.C. 2002)(noting that "SPDs often control over conflicting language in plan agreements anyway because (it is thought) employees actually read the summaries.") Under Section 402(a)(1) of the Employee Retirement Income Security Act of 1974 (ERISA), all employee benefit plans "shall be established and maintained pursuant to a written instrument." *See* 29 U.S.C. § 1102(a)(1). In addition to a written plan document, ERISA requires a "summary plan description" "that shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1102(a)(1). A number of courts, including this one, have held that even where discrepancy arises between the SPD and the Plan, the language of the SPD governs in ERISA disputes. *See, e.g., Pierce v. Sec. Trust Life Ins. Co.,* 979 F.2d 23, 27 (4th Cir.

6

1992); *Hansen v. Cont'l Ins. Co.,* 940 F.2d 971 (5th Cir. 1991); *see also Whitman v. Graphic Communications Int'l Union Supplemental Ret. and Disability Fund*, 871 F. Supp. 465, 466-467 (D.D.C. 1994).

While neither the original MetLife Plan or the 1994 Plan define the terms "retiree," "retired," or "retirement," the 1991 SPD, in effect at the time of the 1992 payment and 1996 *ad hoc* increase at issue in this case, clearly states that "[r]etire or [r]etirement is defined as termination of employment with MetLife with a currently payable benefit under the Metropolitan Retirement Plan, having satisfied the service and age requirements for early retirement."  Def. Ex. A9.

Plaintiffs argue, however, that the SPD cannot be a governing document because the document itself states that "[i]f there is a difference between this book and the documents or contracts, then the documents will govern in every instance." Def. Ex. 32.  In support of this argument, plaintiffs rely on several cases holding that where a provision in the SPD conflicts with provisions in other plan documents, the provisions more favorable to the plaintiff are to govern the dispute.  *See, e.g., Sturges v. Hy-Vee Emp. Ben. Plan and Trust*, 991 F.2d 479, 4800-81 (8th Cir. 1993); *Glocker v. W.R. Grace & Co.,* 974 F.2d 540, 542-43

(4th Cir. 1992); *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1201 (10th Cir. 1992).

However, in the present case, there is no conflict between the relevant provision of the 1949 Plan and the 1991 SPD. The Court recognizes that the 1992 and 1996 letters are unclear and ambiguous. Both letters could give the reader the impression that "dear retiree" would encompass all those who had not only retired from MetLife, but also those who had terminated employment with MetLife and were, at the time of the dissemination of the letters, a "retired person." Nevertheless, the ambiguity in those letters cannot overcome the fact that the 1949 Plan Document and the Summary Plan Description govern the contract. "So long as contract language is plain and free from ambiguity, it must be construed in its 'ordinary and usual sense.'" *See Equitable Life Assurance Soc'y v. Porter Engelhart*, 867 F.2d 79, 87-88 (1st Cir. 1989)(quoting *Boston Edison Co. v. FERC*, 856 F.2d 361, 365 (1st Cir. 1988)). Plan language is considered ambiguous "only if it is reasonably susceptible to different constructions and capable of being understood in more than one sense." *See City of Erie v. Gaur. Nat'l Ins. Co.*, 109 F.3d 156, 163 (3d Cir. 1997)(quoting *12th St. Gym, Inc. v. Gen. Star Indem. Co.*, 93 F.3d 1158, 1165 (3d Cir. 1996)).

8

Taken as an integrated whole, the 1949 Plan and the SPD provide only one reasonable interpretation with respect to the 1992 and 1996 adjustments in benefits: the increases in benefits only applied to individuals who received retirement benefits immediately upon ceasing active employment at MetLife.  The increases did not apply to individuals who terminated their employment with MetLife without satisfying the retirement requirements, even if they opted to elect a deferred annuity upon termination of their employment in lieu of receiving their cash surrender value.  Under the 1949 Plan, when an employee decided to leave MetLife before the normal year and service requirements for retirement had been fulfilled, their departure and choice of either a cash surrender value or Paid-Up Deferred Annuity was discussed under the heading, "Discontinuance as Contributor."  Def. Ex. A2.  In contrast, when a MetLife employee had met the requirements for retirement, their departure was discussed under the heading, "Normal Retirement Date."  Def. Ex. A2.  The SPD only refines the distinction between these two groups by defining the precise meaning of "retire" or "retirement," with the effect of excluding deferred vested annuitants.

Therefore, through a plain reading of the Plan documents, the "average plan participant" would have been "reasonably apprise[d]… of their rights and obligations under the plan" and

9

plaintiffs, as deferred vested annuitants, should have been on notice that they did not qualify as "retired" for the purposes of the Plan.  *See* 29 U.S.C. § 1022(a).

### 2. Extrinsic Evidence

Plaintiffs argue that because the documents are ambiguous, the Court should look to extrinsic evidence to interpret the intent of the drafters.  However, even assuming that the documents are ambiguous, internal MetLife memorandum, institutional behavior, and other extrinsic evidence only further support the assertion that MetLife never intended deferred vested annuitants to be considered formal retirees entitled to benefit increases.  For example, one month after sending a letter notifying retirees of the 1992 one-time payment, MetLife's Plan Administrator sent another letter, explaining that deferred vested annuitants were not "retirees" and were not the intended recipients of the one-time payment.  Def. Ex. A34.  In a "teleservicing script" used by MetLife's benefits department, "only retired associates receive the special payment."[1]  Def. Ex. A36.  In addition, in July 1996, a computer "system specification" used to identify categories of former employees for internal administrative tracking did not include deferred vested annuitants as those individuals eligible for the 1996

---

[1] The "teleservicing script" was a pre-written set of answers to be used by MetLife employees when former employees called the benefits department with questions about the 1992 payment.

increase.  Def. Ex. A42.  In total, extrinsic evidence specific to the benefits in controversy demonstrate that MetLife did not intend to provide those benefits to deferred vested annuitants.

### III. CONCLUSION

Plaintiffs have failed to demonstrate any ambiguity in MetLife's Plan documents.  A plain understanding of the Plan documents indicates that plaintiffs and other similarly situated deferred vested annuitants are not entitled either to the 1996 *ad hoc* increase or to the 1992 one-time payment because those adjustments were intended only for those employees who had met the Plan's formal requirements for MetLife retirement. Accordingly, defendants' motion for summary judgment is **GRANTED.** An appropriate order accompanies this Memorandum Opinion.


**Signed:   Emmet G. Sullivan**
**United States District Judge**
**September 26, 2005**

Notice via ECF to all counsel of record.